UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRIAN HOPKINS :<br>JONELL HOPKINS, INDIVIDUALLY :<br>JONELL HOPKINS ppa JOSEPH HOPKINS :<br>JONELL HOPKINS ppa LUKE HOPKINS :<br>JONELL HOPKINS ppa EVE HOPKINS :<br>AND JAKE HOPKINS :<br>   :<br>   PLAINTIFF :<br>   :<br>V. :<br>   :<br>KAWASAKI RAIL CAR, INC. AND :<br>KAWASAKI MOTORS MANUFACTURING :<br>CORP., U.S.A. :<br>   :<br>   DEFENDANTS : | 3:17-cv-00839-VLB<br><br><br><br><br><br><br><br><br><br><br><br><br><br>JUNE 6, 2017 |

## **MOTION FOR DISQUALIFICATION**

This lawsuit was commenced in Connecticut Superior Court in the Judicial District of Bridgeport on April 24, 2017. On May 19, 2017, the defendants removed the case to the United States District Court for the District of Connecticut, where it was assigned to the Honorable Vanessa L. Bryant. Because Judge Bryant's impartiality might reasonably be questioned in this matter, the Plaintiffs hereby move pursuant to 28 U.S.C. §§ 144 and 455 for an order disqualifying Judge Bryant from presiding over this case.

I.     **Introduction**

The undersigned counsel for the Plaintiffs, who previously served as the Chair of the Connecticut Bar Association's Federal Judiciary Committee, was actively involved with the Committee's interview of Judge Bryant in connection with her nomination to the United States District Court for the District of Connecticut on January 25, 2006.

On May 6, 2006, the American Bar Association Standing Committee on the Federal Judiciary concluded that Judge Bryant was "not qualified." Shortly afterwards, on May 18, 2006, the Connecticut Bar Association's Federal Judiciary Committee similarly concluded that Judge Bryant was "not qualified," as it had found that Judge Bryant "does not possess the requisite judicial temperament." *See* Affidavit of William W. Clendenen in Support of Motion for Disqualification ("Affidavit"), Ex. D, p. 1. While the United States Senate Committee on the Judiciary held hearings on Judge Bryant's nomination on September 26, 2006, her nomination ultimately did not proceed to a vote.

On January 9, 2007, Judge Bryant was re-nominated to the United States District Court for the District of Connecticut. On February 23, 2007, the American Bar Association Standing Committee on the Federal Judiciary reevaluated Judge Bryant because she had been re-nominated, reversed its previous position, and concluded that Judge Bryant was "qualified." Affidavit, Ex. E, p. 1. The Connecticut Bar Association's

Federal Judiciary Committee, however, declined to reevaluate Judge Bryant, standing on its previous opinion of "not qualified." *Id*. Judge Bryant was thereafter confirmed by a voice vote in the United States Senate on March 28, 2007.

During the period between Judge Bryant's nomination and confirmation, the negative conclusions drawn by the Connecticut Bar Association's Federal Judiciary Committee were heavily criticized. Then-Attorney General Richard Blumenthal stated that "the [Connecticut] bar association conclusion is completely unspecific, unsupported by any factual evidence, and reliant on nameless, unidentified critics. These criticisms seem to reflect emotional or subjective reasons rather than objective results." Affidavit, Ex. F, p. 1. Senator Christopher Dodd remarked that "the criticisms came from anonymous sources," which was "always suspicious." Affidavit, Ex. G, p. 1. More pointedly, Lisa Siegel, an editor of the Connecticut Law Tribune, observed in that publication that "the bar associations' negative ratings have been criticized by some leaders of the African American community as the product of perhaps a racially biased smear campaign." Affidavit, Ex. D, p. 2.

In light of the foregoing, on May 8 and May 9, 2007, the undersigned wrote Judge Bryant to apprise her of the fact that two cases involving his firm, which were initiated in 2005 and 2006, respectively, had been reassigned to her for all further

proceedings. Affidavit, Exs. A, B. The undersigned requested that Judge Bryant recuse herself from presiding over each of those matters and any others in which attorneys from the undersigned firm had an appearance. *Id.* Judge Bryant agreed and on May 22, 2007, both cases were transferred from Judge Bryant's docket. *Shetucket Plumbing Supply Inc. et al v. S.C.S Agency Inc., et al*, 3:05CV00424(RNC) (D.Conn. Sept. 26, 2008), Doc. 184; *Jamilik v. Yale University, et al.*, 3:06CV00566(PCD) (D.Conn Mar. 23, 2010), Doc. 55.

On August 5, 2008, the undersigned wrote Judge Bryant to apprise her of the fact that a recently-filed matter had been assigned to her docket, and once again requested that she recuse herself from that matter and any others in which attorneys from the undersigned firm had an appearance. Affidavit, Ex. C. Judge Bryant immediately ordered the case transferred to Judge Eginton "in the interest of justice." *Branford v. Arrowood Indemnity Co et al*, 3:08CV01165(WWE) (D.Conn. Sept. 10, 2008), Doc. 5.

When the instant matter was removed from the Superior Court for the Judicial District of Bridgeport and assigned to Judge Bryant, the undersigned again requested that Judge Bryant recuse herself from the matter. *See* Affidavit, Ex. J. Judge Bryant has not responded to date. Accordingly, the Plaintiffs now move for an order

4

disqualifying Judge Bryant.

## II. Legal Standards

28 U.S.C. §§ 144 and 455 govern judicial disqualifications. The former statute provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists.

28 U.S.C. § 144. The latter statute, 28 U.S.C. § 455, which applies to all justices, judges, and magistrates, provides, in relevant part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party.

28 U.S.C. § 455. In reviewing a motion for disqualification, facts alleged in an affidavit made pursuant to 28 U.S.C. § 144 must be accepted as true, and the Court must determine whether the facts therein "give fair support to the charge of a bent of mind

that may prevent or impede impartiality of judgment." *United States v. IBM,* 47 F.Supp. 1372, 1379 (S.D.N.Y. 1979), citing *Berger v. United States*, 255 U.S. 22, 41 (1921). Both statutes are analyzed under the same standard, requiring a showing that "a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326, 333 (2d Cir. 1987).

### III.     Argument

Disqualification is required in this matter because a reasonable person, knowing all the facts of Judge Bryant's initial nomination, the Connecticut Bar's opposition to the nomination while the undersigned served on and chaired its Federal Judiciary Committee, the public commentary as her nomination was pending, then expired, then resubmitted, and Judge Bryant's recusal history in matters involving the undersigned, would be inexorably led to the conclusion that the Court's impartiality can reasonably be questioned here.

Judge Bryant's nomination was controversial even before the Connecticut Bar Association's Federal Judiciary Committee had released its negative conclusion. Two weeks earlier, the American Bar Association Standing Committee on the Federal Judiciary concluded that Judge Bryant was "not qualified." The conclusion was

characterized as the result of the efforts of an "influential group of Connecticut lawyers – including both state and federal judges" who "privately questioned Bryant's experience and credentials, mounting a quiet but intense lobbying effort to derail the nomination." Affidavit, Ex. H, p. 1.

After the Connecticut Bar Association's Federal Judiciary Committee released its conclusion that Judge Bryant was not qualified, Judge Bryant's supporters continued to argue that opposition to her nomination was not made in good faith and had been raised for another, unstated purpose, intimating that such opposition arose from improper animus. At the hearing on her nomination, Attorney General Blumenthal submitted written testimony on Judge Bryant's behalf in response to a question from Senator Specter asking how the Senate Judiciary Committee was to weigh the criticisms of Judge Bryant's temperament, and stressed his concern that "it is impossible for the nominee to prove that the unknown sources of the information are biased or wrong." *Confirmation Hearing on the Nominations of Michael Brunson Wallace To Be U.S. Circuit Judge for the Fifth Circuit and Vanessa Lynne Bryant To Be U.S. District Judge for the District of Connecticut: Hearing Before the Committee on the Judiciary*, 109th Cong. 204 (2006) (statement of Attorney General Richard Blumenthal). The day after the hearing, Senator Dodd, who, as previously noted, had remarked that the confidential

nature of the criticisms of Judge Bryant was suspicious, further observed that the criticisms may sound in the fact that "[Judge Bryant] is not part of the club" of lawyers who often ascend to the federal bench. Affidavit, Ex. G, p. 1.

After Judge Bryant's nomination expired, it was resubmitted, prompting the American Bar Association Standing Committee on the Federal Judiciary to begin a "routine re-examination of Bryant's qualifications." Affidavit, Ex. I, p. 1. Whereas the American Bar Association reversed its prior conclusion as a result of this re-examination on March 5, 2007, the undersigned stated on the same date that the Connecticut Bar Association's Committee on the Federal Judiciary "does not have a rule requiring automatic re-evaluation of a candidate upon re-nomination." Affidavit, Ex. E, p. 1. The President of the Connecticut Bar Association expanded, stating that there was "no reason for the CBA to revisit its evaluation." *Id.* Within the month, Judge Bryant was confirmed by a voice vote in the United States Senate, and she received her commission on April 2, 2007.

Just over a month later, two cases in which the undersigned had appeared, initiated in 2005 and 2006, respectively, were transferred to Judge Bryant's docket. On May 8 and 9, 2007, the undersigned wrote to Judge Bryant to notify her of the fact of the transfers and request that she recuse herself from presiding over both matters.

Affidavit, Exs. A, B.  Both cases were transferred from Judge Bryant's docket on May 22, 2007.

The following year, on August 5, 2008, the undersigned wrote Judge Bryant to notify her that a new matter in which he had an appearance had been assigned to her docket, and again requested that she recuse herself from that matter.  Affidavit, Ex. C.  On that date, Judge Bryant ordered the case transferred to Judge Eginton "in the interest of justice."  *Branford v. Arrowood Indemnity Co et al*, 3:08CV01165(WWE) (D.Conn. Sept. 10, 2008), Doc. 5.

Judge Bryant's nomination was hailed as an important step in the diversification of the federal bar; her critics in the state and federal bar associations, however, were assailed as motivated by racial bias.  The undersigned served on the Connecticut Bar Association's Federal Judiciary Committee throughout the period from Judge Bryant's initial nomination until her confirmation, and participated in actively interviewing her.  The Connecticut Bar Association, unlike the American Bar Association, refused to re-examine Judge Bryant or modify its conclusion that she was not qualified while the undersigned served as Committee Chair.  Judge Bryant was confirmed shortly thereafter, and subsequent to the undersigned's requests, matters in which the undersigned had appeared were transferred from her docket.

The undersigned, having received transfers in all cases in which he had appeared before Judge Bryant, believed that he had been placed on Judge Bryant's "conflict list." The undersigned therefore inquired with the Clerk of the Court on May 26, 2017 whether this remained the case, and was informed that he was no longer on Judge Bryant's "conflict list." Affidavit, ¶ 16. On May 31, 2017, the undersigned wrote Judge Bryant to apprise her of the assignment of the instant case to her docket and request that she recuse herself from this matter. Affidavit, Ex. J. To date, Judge Bryant has not responded. Affidavit, ¶ 18.

Given the context of Judge Bryant's nomination, the Connecticut Bar Association's Federal Judiciary Committee's opposition, the public, racially charged commentary surrounding her pending, then expired, then resubmitted nomination, and Judge Bryant's recusal history after requests from the undersigned, a reasonable person would be compelled to conclude that Judge Bryant's impartiality could reasonably be questioned in this matter. Consequently, the Plaintiffs move for the disqualification of Judge Bryant, a stay of this action pending the rulings on this Motion, and an expedited Order on this motion.

THE PLAINTIFFS

BY_____
William H. Clendenen, Jr.
CLENDENEN & SHEA, LLC
400 Orange St.
New Haven, CT 06511
203/787-1183

CERTIFICATION:

This is to certify that a copy of the foregoing was filed electronically on the 6th day of June 2017. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____
CLENDENEN & SHEA, LLC