# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRIAN HOPKINS; JONELL HOPKINS, individually; JONELL HOPKINS ppa JOSEPH HOPKINS, JONELL HOPKINS ppa LUKE HOPKINS; JONELL HOPKINS ppa EVE HOPKINS; and JAKE HOPKINS; | Civil Action No. 3: 17 - CV - 839  (CSH) |
| Plaintiffs, v. | |
| KAWASAKI RAIL CAR, INC. and KAWASAKI MOTORS MANUFACTURING CORP., U.S.A., | AUGUST 28, 2017 |
| Defendants. | |

## RULING ON DEFENDANT KAWASAKI RAIL CAR, INC.'S MOTION FOR LEAVE TO FILE SECOND AMENDED THIRD-PARTY COMPLAINT [DOC. 37]

### I. BACKGROUND

In this removed civil action for grievous electrocution injuries, one defendant now requests leave to amend its third-party complaint for the second time.  The facts recounted here are based on the pleadings filed in this Court.

On or about April 17, 2017, Plaintiffs Brian Hopkins and Jonell Hopkins, and their four children, commenced this civil action against defendants Kawasaki Rail Car, Inc. ("KRC") and Kawasaki Motors Manufacturing Corp., U.S.A. ("KMMC") (collectively "Defendants") in Connecticut Superior Court, the Judicial District of Fairfield at Bridgeport.[1]  In their Complaint,

---

[1] Jonell Hopkins brings the claims of her three minor children "per prochein ami" ("ppa") – "by next friend" in ancient French –  and the fourth child, Jake Hopkins, sues in his own name because he has reached the age of majority.

Plaintiffs alleged that on or about April 25, 2015, Brian Hopkins, while employed by Metro-North Commuter Railroad Company ("Metro-North"), was in the process of putting Kawasaki M8S rail cars into service when he became injured "suddenly and without warning" by "an electrocution and electrical arch flash . . . in the Acceptance Facility" located at the "eastern side of the New Haven Rail Yard in New Haven, Connecticut." Doc. 1, First Count ¶¶ 3, 6, 8. Said electrocution allegedly involved a defective pantograph and live catenary wires in the Acceptance Facility.[2]

Plaintiffs allege, *inter alia*, that Defendant KRC "owned, controlled and/or possessed the M8 Acceptance Facility;" was responsible for its maintenance and operation; and "created, allowed and/or maintained" that facility so that it created a "reasonably foreseeable risk of electrocution to persons putting M8 and M8S cars into service." *Id.* ¶¶ 3-7. In addition, Plaintiffs assert that KMMC was the corporation which "engaged in the design, manufacture, wholesaling, distribution, promotion and/or retailing in Connecticut" of the defective pantograph which contributed or caused Brian Hopkins's electrocution. *Id.*, Fourth Count ¶ 4.

As the result of the electrocution, Plaintiff Brian Hopkins has allegedly suffered "serious, painful and permanent injuries," including but not limited to: "[f]ull thickness electrocution burns covering forty percent of his body;" "[p]artial thickness electrocution burns covering his left forearm and palm;" "[c]ardiac arrest requiring emergency resuscitation;" "[p]olymicrobial secondary infections to his left ankle and lower leg, exposing bone and tendon;" "[s]exual dysfunction requiring full reconstructive surgery;" "[p]ersistent dehydration and gastrointestinal distress;" "cognitive impairment;" "[r]ecurrent headaches;" "[i]nsomnia and disordered sleeping;" and "[p]ermanent

---

[2] "A pantograph (or 'pan') is an apparatus mounted on the roof of an electric train, tram or electric bus to collect power through contact with an overhead catenary wire. It is a common type of current collector." *See* https://en.wikipedia.org/wiki/Pantograph_(transport).

disfigurement." *Id.,* First Count ¶ 13. Plaintiff Brian Hopkins has also allegedly suffered various forms of mental distress (*e.g.*, shock to his nervous system, anxiety, distress, post-traumatic stress, depression). *Id.* ¶ 14. All of the aforesaid grievous injuries have led to the expenditure of "sums of money for medical care and treatment" and will require future payment of such expenses. Plaintiff has allegedly lost his earnings, earning capacity, and former lifestyle, all of which have negatively impacted his wife and children.

Among the claims set forth in their Complaint, Plaintiffs have alleged common law negligence and statutory product liability violations, Conn. Gen. Stat. § 52-572m, *et seq.*, against each of the Defendants. In addition, Plaintiffs have alleged that KRC violated Connecticut's building, fire and demolition code, Conn. Gen. Stat. § 29-252, *et seq., id.*, Second Court ¶ 14; Defendants defectively designed and manufactured the pantograph at issue, *id.* Fourth count ¶¶ 8-19, 34-42; Defendants failed to warn or instruct Brian Hopkins regarding the "significant danger of electrocution in testing the pantograph," *id.* ¶¶ 20-27; there existed a "malfunction" due to a "defect in the pantograph," *id.* ¶¶ 28-33; there has been a loss of consortium by Jonell Hopkins due to her husband Brian's injuries, *id.* Fifth Count ¶¶ 91-92; and the Hopkins children have lost their "parental care, training, love, and companionship of their father," *id.* Sixth Count ¶¶ 91- 95. With respect to damages, Plaintiffs pray for money damages, punitive damages, any other appropriate relief, and attorneys' fees and costs, *id.* Prayer for Relief ¶¶ 1-4.

On May 19, 2017, Defendants removed Plaintiffs' state action to this District in a timely manner pursuant to 28 U.S.C. §§ 1441 and 1446.[3] In their Notice of Removal, they asserted that this

---

[3] Defendants have asserted that they complied with the removal requirements set forth in 28 U.S.C. §§ 1441 and 1446(b) because they have filed their notice of removal "within 30 days" after their receipt of the summons and complaint. *See* Doc. 1 ("Notice of Removal"), ¶¶ 1-4. They

Court has subject matter jurisdiction over the action because it "involves a controversy wholly between citizens of different states" so that there is "diversity of jurisdiction" pursuant to 28 U.S.C. § 1332(a)(1). According to Defendants, both KRC and KMMC are corporate entities. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." Defendants assert that KRC is "a New York corporation with its principal place of business in Yonkers, New York" and is thus a citizen of New York. *See* Doc. 1 ("Notice of Removal") ¶ 5. KMMC is "a Nebraska corporation with its principal place of business in Lincoln, Nebraska" and is accordingly a citizen of Nebraska. *Id.* ¶ 6. Plaintiffs are, "[u]pon information and belief, . . . citizens of the State of Connecticut."[4] *Id.* ¶ 7. Upon these facts, the citizenship of all Plaintiffs is completely diverse from that of both Defendants.

Furthermore, from the face of the Complaint, given the extensive injuries Brian Hopkins allegedly suffered from electrocution on April 25, 2015, the Court concurs with Defendants that "it appears that the amount in controversy exceeds the sum or value of $75,000[,] exclusive of interest and costs." *Id.* ¶ 10. Consequently, this action meets the jurisdictional amount in damages for "diversity of citizenship" subject matter jurisdiction under 28 U.S.C. § 1332(a).

---

deduce this fact from their knowledge that: the Connecticut Secretary of State received the summons and complaint on April 19, 2017; KRC received said documents thereafter (on an "unknown" date), KMMC received these documents "*no earlier* than April 19, 2017," and the notice of removal was filed by May 19, 2017. *Id.* ¶¶ 1-3 (emphasis in original).

[4] In the Complaint, Plaintiffs state that "Plaintiff Brian Hopkins was at all relevant times a resident of Bridgeport, Connecticut." Doc. 1, First Count ¶ 1. Although residence does not equate with citizenship, Plaintiff's residence in Connecticut supports, rather than militates against, a finding of his domicile, and hence citizenship, in that state. Brian Hopkins does not suggest, in his filings in the case, that he is a citizen of any state other than Connecticut.

## A. <u>History of Third-Party Complaints</u>

Following removal of this action, each Defendant filed a third-party complaint against Metro-North and Trans Tech of South Carolina, Inc. ("Trans Tech"), asserting that this Court "may exercise supplemental jurisdiction over the claims therein pursuant to 28 U.S.C. § 1367." Doc. 22 & 23. In KRC's original third-party complaint, it alleged that "[o]n or about December 18, 2009, KRC and Metro-North entered into a written and signed License Agreement whereby Metro-North, as Licensor, permitted KRC, as Licensee, use of a portion of the New Haven Railyard." Doc. 22, ¶ 14. Moreover, "Metro-North reserved unto itself and its employees the right to use the Licensed Premises to conduct its railroad business operations." *Id.* ¶ 16. KRC further alleged that as an employee of Metro-North, Brian Hopkins was "under the supervision and control of Metro-North, on a portion of the Licensed Premises" at the New Haven Rail Yard at the time he was injured in April of 2015. *Id.* ¶ 18.

As to Metro-North, KRC asserted claims for apportionment and common law and contractual indemnification. First, in its apportionment claim, KRC alleged that Metro-North is or may be liable, pursuant to Conn. Gen. Stat. § 52-572h, for some or all of Plaintiffs' damages or losses; and said damages and/or losses should be apportioned to Metro-North under Conn. Gen. Stat. §§ 52-102b and 52-572h. *Id.* ¶ 39. Second, as to common law indemnification, KRC alleged that it was Metro-North's negligence, rather that any act or omission by KRC, that was the "direct and immediate cause of the alleged accident and resulting injuries and damages." *Id.* ¶ 42. Third, with respect to contractual indemnification, KRC alleged that "[p]ursuant to [paragraph 6 of] the License Agreement" with Metro-North, KRC was not "responsible [for] the acts or omissions of Metro-North's contractors, agents, employees or others" performing work on or "otherwise accessing the

Licensed Premises." *Id.* ¶ 48. KRC asserted that it was consequently entitled to indemnification for any damages inflicted on Plaintiffs due to the fault or negligence of Metro-North. *Id.* ¶¶ 49-50.

With respect to Trans Tech, KRC alleged contractual and common law indemnification claims and contribution. First, to make out a claim for contractual indemnification, KRC alleged that on or about May 23, 2007, KRC and Trans Tech entered into a written and signed subcontract under which Trans Tech, agreed to "design and manufacture pantographs for KRC." *Id.* ¶ 53. Furthermore, in that subcontract, Trans Tech agreed to be held "responsible for . . . all injuries (including death) to all persons" which "occurr[ed] on account of, or in connection with, the performance of Subcontract Work." *Id.* ¶ 55 (citing and quoting Article 6.01A of Subcontract). Trans Tech also allegedly "promised and agreed . . . that its work would be free from defects." *Id.* ¶ 56. Under these provisions, KRC alleged that Trans Tech must "indemnify KRC for any claims, losses, damages and expenses incurred in connection with this case." *Id.* ¶ 57.

Next, in pleading a common law indemnification claim, KRC alleged that Trans Tech was in complete "control over the design and manufacture of the pantograph," including "its component parts and/or product warnings or instructions." *Id.* ¶ 59. Moreover, KRC had no knowledge of any negligence on the part of Trans Tech or any product defect or any failure to warn or instruct Brian Hopkins regarding the pantograph's use. *Id*. ¶ 61. KRC thus asserted that Trans Tech was liable to indemnify KRC for damages incurred by Plaintiffs due to the negligence of Trans Tech and/or the pantograph product it suppled to KRC. *Id.* ¶¶ 62-64.

Lastly, KRC sought contribution from Trans Tech pursuant Conn. Gen. Stat. §§ 52–572o, alleging that Trans Tech "designed, formulated, produced and/or manufactured the allegedly defective pantograph," including its component parts and any accompanying warnings and

instructions. *Id.* ¶ 66. Accordingly, KRC asserted that Trans Tech "is liable for all or part of [P]laintiffs' claims against KRC." *Id.* ¶ 67.

As noted *supra,* KMMC also filed a third party complaint against Metro-North and Trans Tech. Doc. 23. As to each third-party defendant, KMMC brought claims for common law indemnification and contribution.

On June 29, 2017, twenty days after filing their third-party complaints [Doc. 22 & 23], both KRC and KMMC filed amended third-party complaints "as a matter of course" under Federal Rule of Civil Procedure 15(a). *See* Doc. 25 & 26. Specifically, they amended their pleadings "once as a matter of course within: 21 days after serving [them]," by filing electronically. Fed. R. Civ. P. 15(a)(1)(A). These amended third-party complaints contained the same third-party claims against Metro-North and Trans Tech but included ministerial, rather than substantive, changes. For example, in its amended third-party complaint, KMMC inserted "Transtech of South Carolina, Inc." as an "a/k/a" in referring to "Trans Tech of S.C., Inc." on page 2, at paragraph 3. *Compare* Doc. 23 *and* 25, ¶ 3. Similarly, KRC changed "Complaints" in the pleading's title to "Complaint," inserted "defendant-third party" before "plaintiff" in reference to its own status, and inserted "Transtech of South Carolina, Inc." as an "a/k/a" in referring to Trans Tech. *Compare* Doc. 22 *and* 26, ¶¶ 1,3.

## B.    **Pending Motion**

Pending before the Court is KRC's "Motion for Leave to File Second Amended Third-Party Complaint." Doc. 37. In this instance, KRC seeks permission from the Court to amend pursuant to Federal Rule of Civil Procedure 15(a)(2), which provides that if not permitted to amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Moreover, the Rule directs that "[t]he court should freely give leave when justice so

requires." Fed. R. Civ. P. 15(a)(2).

In the case at bar, KRC has certified in a notice to the Court that it "has inquired of all counsel of record as to whether any party objects to KRC's July 31, 2017 Motion to File Second Amended Third Party Complaint," and "no party objects to the allowance of the motion." Doc. 41. In addition to counsel's explicit certification, such a statement made by counsel is recognized by the Federal Civil Rules as necessarily possessing "evidentiary support," or otherwise subject to sanctions. Fed. R. Civ. P. 11(b)(3), (c). However, even accepting its substance as true, the statement does not comprise "the opposing party's *written* consent." *Id.* 15(a)(2) (emphasis added). KRC thus requests to amend with "the court's leave." *Id.*

Turning to the details of KRC's motion, the amendments presented add factual details to the claims. The proposed amendments include "a new paragraph 19 which incorporates additional allegations based on facts learned by counsel through review of additional contracts, procedures, protocols and specifications relating to the business relationship between KRC and the third-party defendant, Metro-North." Doc. 37, at 2. Moreover, "[t]he proposed amendment also includes a new paragraph 51 which expands on the License Agreement responsibilities alleged in the original third-party complaint." *Id.* "Finally, the proposed amended complaint corrects two spelling errors and capitalizes the letter 'P' in 'Plaintiff' in various places for uniformity in the pleading." *Id.* In sum, each of these proposed amendments adds factual detail, provides clarification, and/or makes corrections, which are proper and reasonable purposes of amendment.

In support of the motion, KRC argues that no party will be prejudiced by the proposed amendment. As KRC points out, "[t]his case is in its infancy." *Id.* Third-party defendant Metro-North has only recently appeared on July 25, 2017, and has "not yet filed a responsive pleading."

*Id.* Trans Tech has not yet appeared or filed any responsive pleading to either of the prior versions of KRC's third-party complaint.[5] *Id.* In addition, "[t]he parties have not filed a planning meeting report and have not commenced any formal discovery." *Id.* Lastly, KRC asserts that there has been "no bad faith or undue delay" in its presentation of the amendments. *Id.*

## II. DISCUSSION

### A. Standard to Grant or Deny Motion for Leave to File Third-Party Complaint

In general, pursuant to Rule 14(a)(1) of the Federal Rules of Civil Procedure, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."[6] By design, Rule 14(a) "promote[s] judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim." *Hines v. Citibank, N.A.*, 96 CV 2565(RJW), 1999 WL 440616, *2 (S.D.N.Y. June 28, 1999) (citation omitted). Nonetheless, "the right to implead third parties is not automatic," *Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y.1987). The decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion. *Kenneth Leventhal & Co. v.*

---

[5] The Court notes that since that time, Trans Tech filed an appearance in this action. *See* Doc. 43-35, "Notice[s] of Appearance" by counsel on behalf of Trans Tech of S.C., Inc. (filed 8/16/2017).

[6] Under Rule 14(a), Fed. R. Civ. P., "the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." In the case at bar, KRC filed its first third-party complaint [Doc. 22] on the 14th day after filing its Answer [Doc. 18]. KRC thus filed that initial third-party complaint without a motion. The Court must now address whether KRC's second amended third-party complaint may be filed because KRC has presented it as a proposed amended pleading under Rule 15(a)(2), Fed. R. Civ. P.

*Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984) (*per curiam*); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 477 (D.C. Cir.1976), *cert. denied*, 434 U.S. 1086 (1978).

### 1. <u>Subject Matter Jurisdiction</u>

Before examining the substance of the proposed amended third-party claims, the Court must determine whether it possesses subject matter jurisdiction over those claims. An impleader claim, as every other claim in federal court, must be assessed individually to confirm the existence of a proper basis for federal subject matter jurisdiction. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 66 n. 1 (1996) ("Once federal subject matter jurisdiction is established over the underlying case between [plaintiff] and [defendant], the jurisdictional propriety of *each additional claim* is to be assessed individually.") (emphasis added). "[W]hether a court has subject matter jurisdiction over a third-party . . . , is distinct from an assessment of the propriety and merits of an impleader action." *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000).

As noted *supra*, in their Notice of Removal, Defendants asserted that this Court has subject matter jurisdiction over this action based on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1). Specifically, this matter "involves a controversy wholly between citizens of different states" and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). The Plaintiffs, upon the information and belief of Defendants, are citizens of Connecticut; the corporate Defendants, KRC and KMMC, are citizens of New York and Nebraska, respectively; and the damages alleged well exceed the jurisdictional amount. Doc. 1 ("Notice of Removal"), ¶¶ 5-8.

Moreover, Defendants asserted in their Notice of Removal that subject matter jurisdiction in the main case is based on "diversity of citizenship." Doc. 1, ¶ 12. In general, Plaintiffs' claims

appear to arise under Connecticut common and statutory law, including, *inter alia*, negligence and Connecticut's product liability statute, codified at Conn. Gen. Stat. § 52-572m, *et seq*. At this point, no firm grounds have been presented to find that a "federal question" has been implicated, which would give rise to "federal question" subject matter jurisdiction under 28 U.S.C. § 1331.[7] Similarly, because the proposed impleader claims arise under Connecticut common and statutory law (apportionment, common law and contractual indemnification, and contribution), there is no "federal question" implicated in the proposed amended third-party complaint.[8] The Court therefore examines whether there is "diversity of citizenship," 28 U.S.C. § 1332(a)(1), between the parties in the proposed third-party action.

---

[7] For example, in ¶ 14 of their Complaint [Doc. 1], Plaintiffs generally state that KRC's "failure to prevent the risk of electrocution is prohibited by state and federal statutes." However, they only specifically cite Connecticut statutes.

[8] In its third-party complaint, KRC asserts that "[t]o the extent Plaintiffs' complaint alleges that KRC violated "federal statutes", this Court may have original jurisdiction of Plaintiffs' Complaint against KRC under 28 U.S.C. §1331." Doc. 38, ¶ 6 . However, in its Notice of Removal, KRC based subject-matter jurisdiction over this action solely upon § 1332. Doc. 1, ¶ 12.

Furthermore, KRC now states that "[t]his Court has jurisdiction over KRC's Third-Party Complaint against Metro-North pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367." Doc. 38, ¶ 7. As to § 1331, KRC cites no particular federal statute or constitutional issue to support that claim. "It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) (citing *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979)). *See also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996). That rule applies in the context or removal as well. *Blockbuster*, 472 F.3d at 57 ("Blockbuster ought to shoulder the burden [of establishing jurisdiction] because it removed the action to federal court from state court.").

The Court need not, however, resolve whether any "federal question" may be inferred from Plaintiff's Complaint, because, as set forth *infra*, the Court may properly exercise supplemental jurisdiction over KRC's claims against Metro-North pursuant to 28 U.S.C. § 1367(a).

### a.  <u>Subject Matter Jurisdiction Over Claims Against Metro-North</u>

Examining the citizenship of the parties to the third party claim, as stated *supra,* Defendant

KRC is "a New York corporation with its principal place of business in Yonkers, New York." *See*

Doc. 1 ("Notice of Removal") ¶ 5.  Under 28 U.S.C. § 1332(c)(1), "a  corporation shall be deemed

to be a citizen of any State by which it has been incorporated and of the State where it has its

principal place of business."  KRC is thus  a citizen of New York.

According to the third party complaint, "defendant, Metro-North Commuter Railroad

Company, upon information and belief, is a corporation organized, created and existing under the

laws of the State of New York, and is authorized to do business in the State of Connecticut, and is

a common carrier in interstate transportation and commerce by railroad." Doc. 38, ¶ 2.  If, as KRC

alleges, Metro-North has been incorporated by the State of New York, Metro-North, like KRC,  is

a citizen of that State.  Because both parties are citizens of New York, there is no diversity between

them.

In the absence of either "diversity" or "federal question" subject matter jurisdiction over

KRC's third party claims against Metro-North, the Court next turns to examine whether supplemental

jurisdiction exists under 28 U.S.C. § 1367.[9]  That statute, captioned "Supplemental [J]urisdiction,"

provides that "in any civil action of which the district courts have original jurisdiction, the district

courts shall have supplemental jurisdiction over all other claims that are so related to claims in the

action within such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Such supplemental jurisdiction

---

[9]  Supplemental jurisdiction was codified at 28 U.S.C. § 1367(a) in 1990.  Prior to that date, federal courts recognized common law "ancillary jurisdiction."

shall include claims that involve the joinder or intervention of additional parties." *Id.* If the claims

in the proposed Third Party Complaint arise from the same nucleus of operative fact as Plaintiffs'

Complaint, the Court may exercise supplemental jurisdiction.[10] *See, e.g.*, *Coale v. Metro-North R.R.*

*Co* ., No. 3:08–CV–01307 (CSH), 2009 WL 212063, at * 1-2 (D.Conn. Jan. 29, 2009) (recognizing

supplemental jurisdiction with respect to interstate railroad carrier's third-party common law

indemnity claim in relation to plaintiff railroad worker's personal injury action under the FELA).

The Second Circuit has articulated that "disputes are part of the same case or controversy

within § 1367 when they derive from a common nucleus of operative fact." *Achtman v. Kirby,*

*McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citation and internal quotation marks

omitted). *See also, e.g.,  Mar-Cone Appliance Parts Co. v. Mangan*, 879 F. Supp. 2d 344, 357

(W.D.N.Y. 2012) (holding defendants' third-party claims for contribution fall within the court's

supplemental jurisdiction if the impleaded defendant's actions share a common nucleus of operative

fact with the case already before the court); *Estate of Bruce v. City of Middletown*, 781 F. Supp.

---

[10]  Section 1367(b) disallows district courts' exercise of supplemental jurisdiction if original jurisdiction is based solely on diversity of citizenship and the party bringing the claim to be added is a plaintiff or intervenor who requests to be a plaintiff.  However, § 1367(b) does not prevent district courts from exercising supplemental jurisdiction over third-party claims.  The Second Circuit explained, as follows:

> Significantly, § 1367(b) reflects Congress' intent to prevent original plaintiffs – but not defendants or third parties – from circumventing the requirements of diversity. . . .  By contrast, "[b]ecause defendants are involuntarily brought into court, their [claims a]re not deemed as suspect as those of the plaintiff, who is master of his complaint." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir.1998); *see also Associated Dry Goods* [*v. Towers Fin. Corp.*], 920 F.2d [1121,] 1126 [(2d Cir. 1990)] (noting that "ancillary jurisdiction should be more readily available to one haled into court against his or her will than to a plaintiff who has chosen the forum for litigation") . . . .

*Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726 -27 (2d Cir. 2000) (some internal citations omitted).

1013, 1016-17 (S.D.N.Y. 1992) (exercising supplemental jurisdiction over town's third-party claims against movie theater for indemnification and contribution in civil rights and wrongful death action against town where town's claims against theater were "inextricably bound up with the factual issues associated" with underlying civil rights claim). In determining whether two disputes arise from a common nucleus of operative fact, the Second Circuit has traditionally asked whether the facts underlying both claims substantially overlap or the main claim necessarily brings the facts underlying the second claim before the court. *Achtman*, 464 F.3d at 335.

In the case at bar, the main claims of the Plaintiffs against KRC and the third-party claims of KRC against Metro-North and Trans Tech arise from a common nucleus of operative fact. The central issue in all such claims is whether and/or whose negligence gave rise to Plaintiff Brian Hopkins's electrocution on April 25, 2015. Stated differently, the core question involving all parties, including the impleaded third-party Defendants, is which party, if any, should be held liable for Plaintiffs' injuries and damages resulting from the electrocution.

In Plaintiffs' Complaint, they claim that Defendant KRC "owned, controlled and/or possessed the M8 Acceptance Facility;" was responsible for its maintenance and operation; and "created, allowed and/or maintained" that facility so that it created a "reasonably foreseeable risk of electrocution to persons putting M8 and M8S cars into service." Doc. 1, First Count ¶¶ 3-7. They also allege that the subject pantograph in the M8 Acceptance Facility, which KRC alleges was manufactured by Trans Tech, was in "a defective and unreasonably dangerous condition" so that it "did not safely conduct electricity," thereby causing Brian Hopkins to suffer electrocution on April 25, 2015. *Id.* Fourth Count ¶ 14. According to KRC, Brian Hopkins was an employee of Metro-North, working "under the supervision and control of Metro-North" on "a portion of the Licensed

14

Premises then under the control of Metro-North."[11]  Doc. 38, Facts ¶ 18.  Whether Trans Tech was

negligent in designing and/or manufacturing the pantograph in the Acceptance Facility and whether

Metro-North and/or its  agents  or  employees were negligent in supervising or controlling the

premises at the New Haven Rail Yard are central issues to liability in this case.  Therefore, if KRC,

as owner or operator of the M8 Acceptance Facility, is liable to Plaintiffs for the damages resulting

from Brian Hopkins's electrocution, the third-party defendants may be liable in whole or in part to

KRC.  The facts in the main claim and the proposed third-party complaint substantially overlap.

Furthermore, as the United States Supreme Court has stated, for supplemental jurisdiction

to be proper, the "third-party complaint depends at least in part upon the resolution of the primary

lawsuit."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978). "Its relation to the

original complaint is thus not mere factually similarity but logical dependence." *Id.*  In other words,

in the primary action, it must be determined whether Trans Tech designed, manufactured or installed

the pantograph "in a defective and unreasonably dangerous condition" and/or whether Brian

Hopkins's employer Metro-North contributed to or caused his electrocution.  If either of those facts

are proven, the third-party defendants are liable in whole or in part for Plaintiffs' damages.  As Rule

14(a), Fed. R. Civ. P. dictates, the third party claim must "aris[e] out of the transaction or occurrence

that is the subject matter of the plaintiff's claim against the third party plaintiff," which in this case

 is the electrocution of Brian Hopkins and the cause(s) for said electrocution.[12]

_____

[11]  According to KRC, on or about December 18, 2009, KRC and Metro-North entered into
a written License Agreement whereby Metro-North, as Licensor, permitted KRC, as Licensee, use
of a portion of the New Haven Railyard ('Licensed Premises')."  Doc. 38, Facts ¶ 14.

[12]  For example, one issue that must be determined in the primary action is whether the
pantograph caused Brian Hopkins to be electrocuted because it was in a defective and unreasonably
dangerous condition. If that is determined to be true, then the cause of the pantograph's defective

Having found that KRC's third-party claims against Metro-North and Trans Tech for apportionment, indemnification, and contribution arise from a common nucleus of operative fact, the Court must determine whether there are factors which suggest that supplemental jurisdiction should be declined. Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction if the third party claim "raises a novel or complex issue of State law," the third party claim "substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," or the third party claim gives rise to "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367 (c)(1)-(4).

The Second Circuit has held that when determining whether to decline supplemental jurisdiction under § 1367(c), once a court identifies one of the factual predicates set forth in § 1367(c), the court may exercise some discretion to weigh and balance factors previously set forth in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), such as "judicial economy, convenience and fairness to litigants."[13] *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,

_____

condition will be assessed, thereby resolving both the main and third party claims. Specifically, in investigating the condition of the pantograph, the questions of design, manufacture, and/or installation may be examined, revealing whether Trans Tech, Metro-North, KRC, and/or another party (*e.g.*, KMMC) created the dangerous condition. A finding on the factual issues in the main action will lead, in whole or in part, to resolution of the third-party claims for apportionment, indemnification, and contribution.

[13] In so holding, the Second Circuit has adopted the Ninth Circuit's approach in *Executive Software North America, Inc. v. United States District Court for the Central District of California*, 24 F.3d 1545, 1556-57 (9th Cir. 1994). *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d Cir. 1998). Under *Executive Software*, although supplemental jurisdiction must be exercised in the absence of any of the four factors listed in § 1367(c), when one or more such factor is present, the *Gibbs* considerations may influence the court's decision through the exercise of discretion.

140 F.3d 442, 446 (2d Cir. 1998). In other words "the *Gibbs* factors are merged into the subsection 1367(c) analysis," but may be considered only after the court gives full effect to the codified categories enumerated in § 1367(c). 140 F.3d at 447.

In the case at bar, none of the § 1367(c) categories apply. First, KRC's proposed third-party claims do not raise any "novel or complex issue of State law," 28 U.S.C. § 1367(c)(1). Connecticut has codified apportionment claims under Conn. Gen. Stat. §§ 52-102b and 52-572h and contribution claims under Conn. Gen. Stat. §§ 52-572o. Furthermore, as described more fully *infra*, Connecticut has delineated the standard elements for common-law and contractual indemnification claims.

Second, because Plaintiffs' main claims and KRC's third-party claims derive from the same alleged injuries relating to Brian Hopkins's electrocution via the pantograph, the Court does not find that the third party claims of apportionment, indemnification, and contribution will "substantially predominate" over the Plaintiffs' negligence and product liability claims, 28 U.S.C. § 1367(c)(2). The third-party claims are related to and derive from the main claims.

Third, the Court has not "dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3). Plaintiffs' claims all remain pending in the action.

Finally, no "exceptional circumstances" appear to compel this Court's refusal to hear KRC's third-party claims against Metro-North, or for that matter, against Trans Tech, *id.* § 1367(c)(4). In sum, there are no compelling reasons for this Court to decline supplemental jurisdiciton.

### b. Subject Matter Jurisdiction Over Claims Against Trans Tech

According to Defendants, "[a]t all relevant times and at all times hereinafter mentioned, the third-party defendant, Transtech of South Carolina, Inc. a/k/a Trans Tech of S.C., Inc. ('Trans Tech'), is a South Carolina corporation with its principal place of business in Piedmont, South Carolina."

Doc. 38, ¶ 3. As a corporate entity, Trans Tech is a citizen of South Carolina, 28 U.S.C. § 1332(c)(1). Given the requisite amount in controversy – over $75,000, exclusive of interest and costs – the Court may exercise "diversity of citizenship" subject matter jurisdiction over KRC's third-party claims against Trans Tech. 28 U.S.C. § 1332(a)(1).

Furthermore, as discussed above, even if there had been no diversity between KRC and Trans Tech, the Court has determined that Plaintiffs' claims and KRC's third-party claims against Trans Tech for indemnification and contribution arise from a common nucleus of operative fact under 28 U.S.C. § 1367(a). *See* Part II.A.1.a., *supra*.

## 2. *Foman* Standard for Amendment

Having found that the Court may exercise jurisdiction over KRC's third-party claims, the Court next applies the *Foman* standard. In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the United States Supreme Court articulated the relevant standard for a court to determine whether to grant a party's request to amend his or her pleading under Federal Civil Rule 15(a).[14] In particular, the *Foman* court stated: "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" 371 U.S. at 182. "Of course, the grant or denial of an opportunity to amend is within the

---

[14] With respect to amendments other than those which may be made as a matter of course, Rule 15(a)(2), Fed. R. Civ. P., provides:

(2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

The Second Circuit consistently applies *Foman* in favor of motions to amend. *See, e.g., Knife Rights, Inc. v. Vance,* 802 F.3d 377, 389 (2d Cir. 2015) (Rule 15(a)(2) "affords district courts considerable discretion to deny amendment when there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'") (quoting *Foman*, 371 U.S. at 182). *See also Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 109 (2d Cir. 2014); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

Applying the *Foman* standard to KRC's proposed amended third-party complaint, there is no evidence that the proposed amendments are the product of any undue delay or bad faith. KRC presented these amendments within a month after filing the previous version of its third-party complaint [Doc. 26] and represented that the amendments incorporate "additional allegations based on facts learned by counsel through review of additional contracts, procedures, protocols and specifications relating to the business relationship" between KRC and Metro-North. Doc. 37, at 2. The proposed amendments also include additional allegations "expanding on the License Agreement responsibilities alleged in the original third-party complaint." *Id.* Such amendments, providing additional factual detail and offered after discovery of such facts, are proper, evidencing no "undue delay or bad faith."

Furthermore, there is no extended history of "repeated failure [by KRC] to cure deficiencies

by amendments previously allowed;" nor is there "undue prejudice" to the other parties in allowing Plaintiff to amend. The prior, and only other, amended third-party complaint by KRC [Doc. 26] was filed to effect ministerial corrections. The present amendments, as previously described, contain additional factual allegations learned through investigation. Moreover, there is no "undue prejudice" to the parties in allowing amendment where the proceedings are in an early stage and, as KRC's counsel has certified, "no party objects to the allowance of the motion" to amend. Doc. 41. In the case at bar, no party has filed any objection to this motion to amend.

Consequently, unless amendment would be "futile," the leave sought should be freely given, as "justice so requires," Fed. R. Civ. P. 15(a)(2). KRC's addition of facts in an attempt to clarify and enhance the factual allegations in support of its third-party claims is not, in and of itself, futile. If anything, additional facts may strengthen, rather than nullify, these claims before the Court. The Court will thus examine each claim to determine whether its inclusion, as drafted in the proposed amended third-party complaint, would be "futile."

## B.    Futility - Substance of KRC's Third-Party Claims

As the last requirement under the *Foman* test, the Court examines the substance of the proposed amended third-party claims to determine whether they are futile or allege plausible claims.[15] Under Rule 14(a), Fed. R. Civ. P., a third-party claim may be asserted against "a nonparty who is or may be liable to it for all or part of the claim against it." As discussed above, the third

---

[15]    The United States Supreme Court has clarified that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

party's liability must be dependent upon the outcome of the main claim or the third party must be "secondarily liable to the defending party." 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1446.

### 1. Apportionment Against Metro-North Pursuant to Conn. Gen. Stat. §§ 52-102b and 52-572h (Count I)

Connecticut law creates a claim for apportionment by statute. Under Conn. Gen. Stat. § 52-102b(a), captioned "[a]ddition of person as defendant for apportionment of liability purposes," a defendant "in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability." Moreover, § 52-102b(f) clarifies that this section "shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action."

In particular, in Connecticut, the remedy of apportionment provides relief "[i]n a negligence action to recover damages resulting from personal injury, wrongful death or damage to property . . . if the damages are determined to be proximately caused by the negligence of more than one party." Conn. Gen. Stat. § 52-572h(c).

On the other hand, "there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute . . ." Conn. Gen. Stat. § 52-572h(o). "Thus, to adequately allege a claim for apportionment, an apportionment plaintiff must allege negligent conduct." *Meredith v. Contos*, No.

MMXCV156013894S, 2016 WL 785694, at *4 (Conn. Super. Ct. Feb. 5, 2016). Moreover, "[a]n apportionment complaint must allege specific acts of negligence and cannot rely upon legal conclusions." *Id.* (citation omitted).

If an apportionment claim succeeds, "each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages." Conn. Gen. Stat. § 52-572h(c). *See, e.g., Crotta v. Home Depot, Inc.*, 249 Conn. 634, 639 (1999); *Santana v. Yan Tom*, No. NNICV075002545S, 2008 WL 5220213, at *3 (Conn. Super. Ct. Nov. 17, 2008).

In the case at bar, the main Complaint alleges in part that because KRC was negligent its control, possession, maintenance and operation of the M8 Acceptance Facility," it is liable to Plaintiffs for the damages arising from Brian Hopkins's electrocution. Doc. 1 , First Count ¶¶ 3- 7. In its proposed amended third-party complaint, KRC alleges that Brian Hopkins's injuries in the main case were "caused by the negligence of third-party defendant Metro-North" in that Metro-North failed to provide Brian Hopkins with a safe work environment, to properly warn him of potential dangers, to adequately train and supervise him, to provide safe work methods, to inspect and maintain equipment, and to generally prevent the risk and occurrence of electrocution injuries.[16]

---

[16] In support of these allegations, KRC cites Plaintiff Brian Hopkins's complaint in a separate civil action against Metro-North in which Hopkins alleges that the incident described in the Complaint was caused by the negligence of his employer, Metro-North. *See* Doc. 38, Facts ¶ 13, Count I ¶ 35. KRC states that "[a] copy of Plaintiff's complaint against Metro-North is attached hereto as Exhibit B and is incorporated herein by reference." *Id.* Fact ¶ 12. However, there are no attachments to the proposed amended complaint. A copy of that complaint was attached to KRC's prior "Amended Third-Party Complaint" [Doc. 26, Ex. B]. That case, captioned *Brian Hopkins v. Metro-North Railroad Company*, No. 3:17-cv-629 (MPS), remains pending in this District before Judge Shea. The parties may wish to consider whether consolidation of that action, or of hearings held therein, with this action would be appropriate. *See* Fed. R. Civ. P. 42(a). However, the issue of consolidation is not before the Court at this time.

Doc. 38, Count I ¶¶ 34-35.   Consequently, Metro-North "is or may be liable  pursuant to Conn.

Gen. Stat. § 52-572h for some or all of the damages and/or losses allegedly sustained by the

Plaintiffs," as set forth in their Complaint.  *Id.* ¶ 39.  In sum, Plaintiffs have alleged that KRC was

negligent, causing their damages; and in turn, KRC now alleges that Metro-North committed specific

negligent acts or omissions and is liable for all or part of Plaintiffs' damages.  KRC has thus stated

a plausible claim for apportionment under Connecticut statutory law, seeking an apportionment of

liability among KRC and Metro-North corresponding with their respective negligent conduct, which

is yet to be proven at trial.

### 2.    Common Law Indemnification Claims Against Metro-North and Trans Tech (Counts II and IV)[17]

In Connecticut, to state a proper common law indemnification claim, a defendant must show

that: "(1) the party against whom the indemnification is sought was negligent; (2) that party's active

negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of

the accident and the resulting injuries and death; (3) the other party was in control of the situation

to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the

other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party

not to be negligent." *Smith v. New Haven*, 258 Conn. 56, 66 (2001) (citing *Kaplan v. Merberg

Wrecking Corp.*, 152 Conn. 405, 416 (1965)).

In the present case, KRC has set forth plausible claims for common law indemnification

against both Metro-North and Trans Tech.   In particular, with respect to Metro-North, KRC has

---

[17]   The Court notes that in the proposed amended third-party complaint, the Counts are numbered out of sequence with Count IV following, as opposed to preceding, Count V.  *See* Doc. 38, at 10, 12.

alleged that (1) Metro-North was negligent in its failure to provide Brian Hopkins with a safe work environment, including, *inter alia*, failing to properly warn him of potential dangers, train and supervise him, provide safe work methods, inspect and maintain equipment, and generally prevent the risk and occurrence of electrocution injuries; (2) Metro- North's negligence "was the direct and immediate cause of the alleged accident and resulting injuries and damages;" (3) Metro-North had "control of the situation [which] allegedly caus[ed] Plaintiffs to sustain injuries and damages to the exclusion of KRC;" and (4) KRC "did not know" or have any reason to anticipate negligence by Metro-North and "reasonably relied upon Metro-North [to] not be negligent." Doc. 38, Count II ¶¶ 41-47. In sum, KRC has alleged each of the four requisite elements to assert a common law indemnification claim against Metro-North in Connecticut.

Similarly, KRC alleged that (1) Trans Tech was negligent in the design and/or manufacture of the pantograph; (2) "[i]f Brian Hopkins was injured as a result of any product design or manufacturing defect, failure to warn or instruct, negligence, or other condition, act or omission alleged in Plaintiff's Complaint against KRC, then Plaintiffs' injuries and damages were caused by the negligence of Trans Tech and/or by the product Trans Tech supplied to KRC;" (3) "Trans Tech was in control over the design and manufacture of the pantograph, its component parts and/or product warnings or instructions, to the exclusion of KRC;" and (4) "KRC did not know of any negligence on the part of Trans Tech or any product defect or failure to warn or instruct," "had no reason to anticipate any negligence, improper design or manufacture or failure to warn or instruct on the part of Trans Tech, and reasonably relied on Trans Tech not to be negligent and to provide a product that was reasonably safe for its intended use." *Id.*, Count IV ¶¶ 60-65. KRC has alleged each of the four requisite elements to assert a common law indemnification claim against Trans Tech

in Connecticut.

### 3.  Contractual Indemnification Against Metro-North and Trans Tech (Counts III and V).

Connecticut law recognizes an action for contractual indemnification.  As one Connecticut

court summarized:

> A party may bring an indemnification claim based on the terms of an indemnity agreement . . . [A]llegations of contractual indemnification must be supported by the terms of the contract or the contract itself . . . Under Connecticut law, to state a contract-based indemnification claim, the claimant must allege either an express or implied contractual right to indemnification . . . There is no requirement that a party seeking indemnification must assert allegations of exclusive control (or any of the other elements of a claim for indemnification based on active-passive negligence) in order to state a legally sufficient claim for contractual indemnification.

*Lopez v. Chem. Abuse Servs.*, No. CV075010516S, 2008 WL 2169407, at *2-3 (Conn. Super. Ct.

May 7, 2008)(quoting *Kinney v. Gilbane Building Co.*, Superior Court, judicial district of New

Haven at Meriden, Docket No. CV 01 0276049 (September 21, 2004, Wiese, *J.*)). *See also Camarro

v. Cheshire Inv. Corp.*, No. CV020461358S, 2002 WL 31894725, at *3 (Conn. Super. Ct. Dec. 4,

2002) ("A party may bring an indemnification claim based on the terms of an indemnity agreement

... [and] [a]llegations of contractual indemnification must be supported by the terms of the contract

or the contract itself.") (gathering cases).

As a general rule, contractual indemnification claims are "based on written agreements" and

"construed in accordance with the principles of contract law." *Lawrence v. Sodexho, Inc.*, No.

CV065001009, 2007 WL 447298, at *11 (Conn. Super. Ct. Jan. 25, 2007) (citing *PSE Consulting,

Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 290 (2004)). The essential elements for a cause

of action based on breach of contract are:   "(1) the formation of an agreement, (2) performance by

one party, (3) breach of the agreement by the opposing party and (4) damages ... [and] causation." *Lawrence*, 2007 WL 447298, at *11  (citations omitted).

In the present action, KRC has pled claims for contractual indemnification against Metro-North and Trans Tech, alleging that each had entered a contract with KRC which contained a relevant indemnity clause.  As to Metro-North, KRC alleged in Count III that on or about December 18, 2009, KRC and Metro-North entered into a written License Agreement under which KRC, as Licensee, was given use of a portion of the New Haven Rail Yard for "the sole purpose of KRC fulfilling its contractual obligations to Metro-North."  Doc. 38, Facts ¶¶ 14-15.  "Pursuant to the License Agreement, Metro-North is [allegedly] liable to KRC for injury to any person on the Licensed Premises due to the fault or negligence of Metro-North."  *Id.* Count III ¶ 51.  Accordingly, KRC asserts that it is "entitled to indemnification from Metro-North for any claims, losses, damages and expenses incurred in connection with this case."  *Id.* ¶ 52.

Although KRC has attempted to state a claim for contractual indemnification, under Connecticut law, it must either provide the particular "terms of the contract or the contract itself" to establish that it was indemnified by Metro-North for the kinds of damages Plaintiffs allege in the main action.  Absent the presentation of a particular indemnity provision or the contract itself, KRC's claim for contractual indemnification is conclusory and fails to plead a plausible claim.[18]  KRC must

---

[18]  In Count III, at ¶ 50, KRC states that "pursuant to Paragraph 6," KRC "is not responsible from [sic] the acts or omissions [of] Metro-North's contractors, agents, employees or others performing work on the Licensed Premises."  Doc. 38, at 10.  KRC does not, however, quote the provision it describes as "Paragraph 6." Similarly, in  ¶ 51, KRC provides, in conclusory fashion: "Pursuant to the License Agreement, Metro-North is liable to KRC for injury to any person on the Licensed Premises due to the fault or negligence of Metro-North."  Such a statement provides no actual language of the agreement to support it.

therefore either include the quoted provision of the indemnity contract which creates an express or implied right to be indemnified, or produce the indemnification contract for the Court to accept this claim in the proposed third-party complaint.

With respect to Trans Tech, KRC alleges that on or about May 23, 2007, KRC and Trans Tech entered into a written and signed subcontract under which Trans Tech, as subcontractor, agreed to design and manufacture pantographs for KRC. Doc. 38, Count V ¶ 55. In that contract, Article 6.01B provided:

> The Subcontractor **shall** be responsible for … **all injuries** (including death) **to all persons**. . .The liability under this Article 6.01 shall be limited to such injuries . . . **occurring on account of, or in connection with, the performance of the Subcontractor Work**, whether or not the occurrence giving rise to such injury…happens at the Work Site…, but shall exclude injuries to such persons…to the extent caused by the negligence of the Subcontract Indemnified Parties.

*Id.* ¶ 57 (citing Article 6.01A ("Indemnification") (emphasis added by KRC).

Pursuant to this provision, KRC argues that "[i]f Brian Hopkins was injured as the result of any product design or manufacturing defect, failure to warn or instruct, or other Subcontractor Work, then Trans Tech is responsible . . . to indemnify KRC for any claims, losses, damages and expenses incurred in connection with this case." *Id.* ¶ 59.

Because KRC has presented the language of the indemnity provision in its subcontract with Trans Tech, KRC has stated a plausible claim for contractual indemnification against Trans Tech. KRC has brought this contractual indemnification claim based on the express terms of an indemnity agreement.

### 4. Contribution Against Trans Tech (Count VI)

Under Connecticut law, "contribution is [defined as] 'a payment made by each, or by any, of

several having a common interest or liability of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others.'" *Crotta v. Home Depot, Inc.*, 249 Conn. 634, 639 (1999) (quoting *Fidelity & Cas. Ins. Co. v. Sears, Roebuck & Co.*, 124 Conn. 227, 231(1938) and 18 Am. Jur. 2d, Contribution § 1 (1985)).   "The right of action for contribution, which is equitable in origin, arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum [and] [t]hat party may then assert a right of contribution against the others for their proportionate share of the common obligation." *Hanover Ins. Co. v. Fireman's Fund Ins. Co.*, 217 Conn. 340, 353 (1991) (citations and internal quotation marks omitted).  Specifically, one party must potentially be legally compelled to pay damages as a classic "prerequisite to an action for contribution." *Id.*  (citing *Water v. Waters*, 110 Conn. 342, 345 (1930)).

With respect to impleading parties, Conn. Gen. Stat. § 52-102a dictates that  "[a] defendant in any civil action may move the court for permission as a third-party plaintiff to serve a writ, summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."  In addition, in the product liability context, Conn. Gen. Stat. § 52-572o(a)  provides that "the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant."[19]  Reading the

_____

[19]  Under Connecticut law, "product liability claim" is defined as follows:

"Product liability claim" includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. "Product liability claim" shall include, but is not limited to, all actions based on the following theories: Strict liability in tort;

28

statutes together, the Connecticut Supreme Court has held that § 52-572o includes both independent and impleaded prospective actions for contribution. "This construction of § 52–572o (e) furthers the salutary purpose of encouraging parties to consolidate the litigation flowing from a given factual circumstance into a single judicial proceeding thereby avoiding multiplicity of actions." *Malerba v. Cessna Aircraft Co.*, 210 Conn. 189, 195 (1989). "[W]hile § 52-572o (e) requires some disposition of the original claim as a precondition to the initiation of a cause of action seeking contribution from a third party, §§ 52-102a and 52-577a(b) implicitly authorize the inclusion of such a claim in the original product liability action without any preconditions." *Malerba*, 210 Conn. at 195.

In the instant case, KRC has included a contribution claim against Trans Tech in the proposed amended third-party complaint. In Count VI, KRC alleges that if the Plaintiffs in the main action were damaged as alleged in their Complaint, that damage was due in whole or in part to the conduct of Trans Tech, "which designed, formulated, produced and/or manufactured the allegedly defective pantograph and/or component parts . . . " Doc. 38, Count VI ¶ 67. Under this count, Trans Tech is liable for all or part of Plaintiffs' sustained damages, if any, as alleged against KRC so that "KRC seeks contribution pursuant [to] Conn. Gen. Stat. § 52-572o." *Id.* ¶ 68. Under Connecticut statutory law, KRC has pled a plausible claim against Trans Tech for contribution in Count VI.

---

negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent.

Conn. Gen. Stat. § 52-572m (b).

# III. **CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART KRC's "Motion for Leave to File Second Amended Third-Party Complaint" [Doc. 37]. In particular, as detailed below, the Court grants leave to file all proposed third-party claims except one, Count III, in the form in which it is currently presented.

First, with respect to subject matter jurisdiction, although under 28 U.S.C. § 1332(a)(1), there is no "diversity of citizenship" between KRC and third-party defendant Metro-North, the Court has determined that it may properly exercise supplemental jurisdiction over the proposed third-party claims against Metro-North pursuant to 28 U.S.C. § 1367(a). KRC's proposed third-party claims "form part of the same case or controversy [as those of Plaintiffs] under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In particular, KRC's claims arise from the same nucleus of operative fact as Plaintiffs' Complaint. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006). Furthermore, there are no "compelling reasons for [this Court to] declin[e] jurisdiction" over the claims under 28 U.S.C. § 1367(c)(4).

As to Trans Tech, the Court may exercise "diversity of citizenship" subject matter jurisdiction over KRC's claims against Trans-Tech. KRC is a citizen of New York, Trans Tech is a citizen of South Carolina, and the amount in controversy exceeds the sum or value of $75,000. See 28 U.S.C. § 1332(a)(1). Moreover, even were such diversity absent or destroyed, the Court has determined that it may exercise supplemental jurisdiction over KRC's third-party claims against Trans Tech. These claims arise out of the same nucleus of operative fact as Plaintiffs' claims. 28 U.S.C. § 1367(a).

Second, in reviewing the proposed amended third-party claims under the United States Supreme Court's standard for amendment in *Foman v. Davis*, 371 U.S. 178, 182 (1962), all but one

claim passes muster. In particular, there is no evidence of "undue delay, bad faith or dilatory motive" on the part of KRC, there has been "no repeated failure [by KRC] to cure deficiencies" by amendments previously allowed, and there is no "undue prejudice" to the opposing parties in the action. 371 U.S. at 182. Barring futility of the claims, "the leave sought should, as the rules require, be 'freely given.'" *Id.* (discussing Fed. R. Civ. P. 15(a)).

With respect to futility, however, all proposed amended third-party claims are plausible – *i.e.,* not futile – except one: KRC's contractual indemnification claim against Metro-North in Count III. With respect to that claim, in order to state a plausible claim under Connecticut law, KRC must either provide the particular "terms of the [indemnification] contract or the contract itself" in order to establish that it was indemnified by Metro-North for the kinds of damages Plaintiffs allege in the main action. *See, e.g., Lopez v. Chem. Abuse Servs.*, No. CV075010516S, 2008 WL 2169407, at *2-3 (Conn. Super. Ct. May 7, 2008). Without a particular indemnity provision or the contract itself, KRC's contractual indemnification claim against Metro-North remains conclusory.

Accordingly, pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court GRANTS KRC's "Motion for Leave to File Second Amended Third-party Complaint" [Doc. 38] as to all claims except KRC's contractual indemnification claim against Metro-North in Count III, as to which the Court DENIES leave to file in the form presented. KRC is, however, GRANTED LEAVE to include this claim IF it either: includes a paragraph quoting the relevant provision from the alleged indemnity contract – which expressly or impliedly creates a right to indemnity – or appends the indemnity contract itself to the third-party complaint.

Furthermore, KRC is directed to attach all cited and necessary "Exhibits" to its third-party complaint because, unlike in the prior versions of KRC's third-party complaint [Doc. 22 & 26],

KRC has failed to file its relevant attachments. Accordingly, KRC must file its "Second Amended Third-Party Complaint," in conformance with the directives in this Ruling, on or before **September 15, 2017.** Metro-North and Trans Tech must thereafter file their Answers to KRC's second amended third-party complaint on or before **October 13, 2017.**

It is SO ORDERED.

Dated: New Haven, Connecticut
       August 28, 2017

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge